## THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Criminal No. 1:09CR454** |
| v. | ) | |
| | ) | **Honorable Anthony J. Trenga** |
| TORRANCE G. HILL, | ) | |
| | ) | **Sentencing: March 12 2010** |
| Defendant. | ) | |

### DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Rule 32 of the *Federal Rules of Criminal Procedure*, and Section 6A1.3 of the advisory *United States Sentencing Guidelines*, the Defendant, by counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR"). Mr. Hill has submitted objections to the PSR and contends that the "advisory" Sentencing Guidelines range should be 30-37 months (rather than 140-175 months) for the cocaine base (crack) offense, but also agrees that the statutory minimum is 10 years and that the Court is not authorized to impose a sentence below that minimum.

This is a case in which the widely-discredited mandatory minimums for cocaine base (crack) result in a possible sentence that undermines or violates the guiding principle of 18 U.S.C. § 3553(a) that the Court impose the least amount of imprisonment necessary to accomplish the goals of sentencing. Mr. Hill and his counsel agree with the government that a sentence of 10 years imprisonment, the statutory mandatory minimum, is the sentence warranted under Section 3553(a). As such, a sentence of 10 years is a substantial period of incarceration which is sufficient to accomplish the purposes of sentencing in this case as set forth in 18 U.S.C. § 3553(a). Thus, Mr. Hill requests that this Court impose a sentence no greater than 10 years in prison.

**ARGUMENT**

**I.      Crack/Powder Disparity**

   A.      The Sentencing Factors

      The Supreme Court in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), established that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations spelled out in 18 U.S.C. § 3553(a).  In two recent summary reversals, moreover, the Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors.  *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S. Ct. 840 (2009).         Moreover, the Supreme Court has made plain that its cases "do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."  *Nelson*, 129 U.S. at 892.  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Id.* (emphasis in original).  In other words, sentencing courts commit legal error by using a Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. *See also United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009)("[I]t is clear that *Spears* applies with equal force to sentencing decisions under the new crack-cocaine Guidelines and that district courts may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.")

      Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).  *United States v. Booker*, 543 U.S. 220, 259-60 (2005).  Those factors include: (a) the nature and circumstances of the offense and the history and

2

characteristics of the defendant, (b) the kinds of sentences available, © the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

Upon consideration of those factors, a sentencing court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007) (emphasis added).  While the District Court must begin its analysis by correctly calculating the advisory sentencing range, the sentencing court is then free in light of the other statutory sentencing factors to impose an entirely different sentence.   This is because, under *Rita,* a district court is free simply to disagree, based on the § 3553(a) sentencing factors, with the U.S.S.G.'s "rough approximation" of the appropriate sentence for any given case. *Id.*

The primary directive in the actual language of §3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.(emphasis added).  After *Booker* and *Gall,* therefore, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a).  Indeed, whatever sentence the court imposes after appropriately considering all the statutory sentencing factors – "whether inside, just outside, or significantly outside the Guidelines range" – must be reviewed by a Court of Appeals under a "deferential abuse-of-discretion standard" *See Gall,* 128 S.Ct. at 591 (reversing Court of Appeals

and reinstating a probationary sentence where advisory sentencing range was 30-37 months).

    B.    <u>Nature of the Disparity</u>

    It has been over twenty years since Congress first created the crack/powder disparity by establishing widely-divergent mandatory minimums for the two drug offenses based on a 100:1 powder-to-crack quantity ratio, a ratio which the United States Sentencing Commission then adopted and incorporated into the Sentencing Guidelines. In the ensuing years, criticism mounted from a variety of sources that the 100:1 ratio was based on a number of assumptions that simply were not true. As the Supreme Court detailed in *Kimbrough v. United States*, those assumptions included the notion that crack cocaine is more addictive than powder cocaine; that crack dealers and users cause more violence than their powder counterparts; and that crack was more harmful to users than powder cocaine. *See Kimbrough*, 552 U.S. 85, 95-98 (2007).

    The effect of the 100:1 ratio was not merely the unjustified over-incarceration of a class of offenders, but the over-incarceration of African-Americans who comprise over 80% of crack offenders. *See id*. at 98. *See also United States v. Petersen*, 143 F.Supp.2d 569, 578 (E.D. Va. 2001) (discussing 100:1 ratio's disparate impact on African-Americans). As early as 1995, the United States Sentencing Commission concluded that the 100:1 ratio was not warranted, and that the disparity was inconsistent with the original statutory goal "of punishing major drug traffickers more severely than low-level dealers." *Kimbrough*, 552 U.S. at 98. *See also Petersen*, 143 F.Supp.2d at 577 (discussing Sentencing Commission's unanimous conclusion in a 1995 report that the 100:1 ratio "was not justified"). In a 2002 report to Congress, the Commission stated forcefully that the crack/power disparity "'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it promotes unwarranted disparity based on race.'"

*Kimbrough*, 552 U.S. at 98.

Despite the mounting criticism, much of it from within the judiciary, and the long-ago recognition by the Sentencing Commission itself that the disparity is unjustified, change did not come about until late 2007.   In May 2007, the Sentencing Commission proposed an amendment to ameliorate the disparity by reducing the crack Guidelines by 2 levels.[1]   That amendment went into effect in November 2007.   A month later, the Supreme Court issued its landmark decision in *Kimbrough*.  Finding that the crack cocaine Guidelines are not empirically-based and pointing to the Sentencing Commission's own statement that the Guidelines lead to "disproportionately harsh" sentences, the Supreme Court ruled that sentencing courts are free to disagree with the crack/powder disparity embodied in the Guidelines and vary from the applicable Guidelines range on that basis. *Kimbrough*, 552 U.S. at 109-110.

While the Supreme Court's decision in *Kimbrough* and the two-level reduction to the crack Guidelines have served as a partial remedy, the brunt of the disparity remains in effect due to the continued existence of the mandatory minimums.  Over the years, various legislative proposals to address the statutory disparity have made their way before Congress, but none garnered serious consideration.  Congress, however, appears finally poised to act.  In addition to the Supreme Court's implicit acknowledgment in *Kimbrough* that the crack Guidelines create unwarranted disparity, the new Presidential Administration has also brought about a critical change in the debate.  For the first time since the disproportionate mandatory minimums were enacted, the Administration and the Department of Justice have publicly declared support for eliminating the 100:1 disparity altogether.

---

[1]The Commission's proposal was limited to a two-level reduction in order to keep the resulting Guideline ranges in line with the existing statutory minimum penalties.

In an April 29, 2009 Senate hearing held on the crack/powder disparity, Assistant Attorney General Lanny Breuer stated:

> [T]his Administration believes that the current federal cocaine sentencing structure fails to appropriately reflect the differences and similarities between crack and powder cocaine, the offenses involving each form of the drug, and the goal of sentencing serious and major traffickers to significant prison sentences.  We believe the structure is especially problematic because a growing number of citizens view it as fundamentally unfair.  *The Administration believes Congress's goal should be to completely eliminate the sentencing disparity between crack cocaine and powder cocaine.*

Statement of Lanny A. Breuer, Assistant Attorney General, Criminal Division, United States Department of Justice, Before the United States Senate, Committee on the Judiciary, Subcommittee on Crime and Drugs, "Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity," at 9 (April 29, 2009) (hereinafter *Breuer Statement*) (emphasis added).[2]

Assistant Attorney General Breuer further acknowledged that the existing statutory scheme's goal of targeting and incapacitating major drug traffickers has not been achieved in practice.  Instead, those hardest hit by the mandatory minimums are "street level dealers," like Mr. Hill, not the operators of the street markets or the heads of drug trafficking organizations:

> What we do know from floor statements and reports on earlier versions of the enacted legislation is that during this debate, Congress sought to focus the tough five- and ten-year mandatory minimum penalties on 'serious' and 'major' traffickers - the traffickers who keep the street markets operating and the heads of drug trafficking organizations, responsible for delivering very large quantities of drugs . . . Many have questioned whether these policy goals were achieved.  An analysis by the Sentencing Commission using Fiscal Year 2005 data shows that 55 percent of federal crack defendants were street-level dealers.  This compares with only 7.3 percent of powder defendants who were street-level dealers.

---

[2]Available at: http://judiciary.senate.gov/pdf/09-04-29BreuerTestimony.pdf.

*Breuer Statement* at 6.

Legislation is currently pending in both houses of Congress that would eliminate the disparity by treating crack cocaine as equivalent to powder cocaine (thus, distribution of 500 grams of crack would trigger a 5 year mandatory minimum, and distribution of 5 kilograms of crack would trigger a 10 year minimum). The House Judiciary Committee approved a bill in July 2009, and it is currently pending consideration by the full House. *See* U.S. Federal News, House Judiciary Committee Passes Cocaine Equalization Bill (July 31, 2009). On October 15, 2009, Senators Durbin, Leahy, and Specter introduced a similar bill in the Senate which is now before the Senate Judiciary Committee. *See* Carrie Johnson, Senate Bill Seeks to Correct Longtime Sentencing Imbalance, The Wash. Post (Oct. 15, 2009). Both bills are silent with respect to the issue of retroactivity.

C.      Effect of the Disparity

Mr. Hill pleaded guilty to distribution of 50 grams or more of crack cocaine, triggering a 10 year mandatory minimum under 21 U.S.C. § 841(b)(1)(A). The parties agreed that the amount of 148 grams of cocaine base (crack) was involved in this case. If the crack/powder disparity were eliminated and a 1:1 ratio applied, treating the 148 grams as powder cocaine, there would be no mandatory minimum rather than the 10 year minimum under § 841(b)(1)(A).

In addition, the effect of the crack/powder disparity on Mr. Hill can also be seen in the application of the Sentencing Guidelines. The amount of 148 grams of cocaine base (crack) results in a base offense level of 30, but an amount of 148 grams of powder cocaine would result in a base offense level of 18, a substantial difference.

7

## II.     Application of Sentencing Factors Under 18 U.S.C. § 3553(a)

While Congress enacted the current statutory penalties for drug offenses, it also mandated that federal courts impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).   Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; © the advisory guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

The10 year mandatory minimum sentence in this case is more than adequate to take into account the § 3553(a) factors and satisfy that statute's mandate that the Court impose the least amount of incarceration necessary to satisfy the goals of sentencing.

### A.     Nature of the Offense

The offense in this case involved possession with intent to distribute cocaine base (crack). Although law enforcement officers found the drugs inadvertently when executing an arrest warrant on an unrelated matter, Mr. Hill acknowledged his involvement in the distribution of the cocaine. No weapons, violence, or threats of violence were actually involved in the conduct of Mr. Hill.

### B.     Personal Characteristics of Mr. Hill

 Mr. Hill is a 27 year-old U.S. citizen who is a life-long resident of the metropolitan Washington, DC area. He had a difficult childhood, having little contact with his father and leaving

his mother's custody when he was 5 years old due to her problems with substance abuse, health issues, and criminal activity. Some of his siblings have also had problems with substance abuse and criminal activity. He was raised by Mr. Charles Fowlkes until Mr. Hill was 18. Mr. Hill has one child, a son age 8, who currently lives with his mother, Shawanta Alvarez, who has been in a relationship with Mr. Hill for the past 11 years. He has maintained frequent contact with Ms. Alvarez and their son.

Mr. Hill may have completed the 11th grade but does not have a GED, and his school records indicate that he may received special education services and attended special education classes. He has worked at different short-term jobs the last several years.

Mr. Hill has no felony convictions but appears to have several misdemeanor convictions, many of which involved marijuana possession. It appears that much of his prior criminal conduct was related to his drug use.

Mr. Hill has used marijuana and alcohol on a frequent basis for several years. The present offense is related to his frequent use of marijuana, and he acknowledges that he has a problem with drug and alcohol abuse and that he would benefit from intensive drug treatment in prison.

Since Mr. Hill did not complete high school, he could benefit from further education toward a high school degree or a GED, and perhaps vocational training, while incarcerated. Following that, he would also benefit from college-level courses to provide more employment opportunities upon release from prison.

Restitution is not an issue in this case.

C.    The Need to Avoid Unwarranted Disparities In Sentencing

While the goal of the Sentencing Guidelines is to prevent unwarranted disparities in

sentencing, in some cases they create such disparities.  Here, the existing Guidelines are based upon

an explicit and unwarranted disparity between crack and powder cocaine.

    D.  <u>The Need to Provide Deterrence</u>

   With respect to the need to accomplish deterrence, Mr. Hill's age is an important factor in

that regard.  Mr. Hill is 27 years old and a 10 year sentence would mean release from prison around

the age of 35. As the Sentencing Commission has recognized and proven with its own data,

"[r]ecidivism rates decline relatively consistently as age increases." *See Measuring Recidivism: The*

*Criminal History Computation of the Federal Sentencing Guidelines,* United States Sentencing

Commission, May 2004, at 12. In addition, a sentence of 10 years of prison, for someone with no

prior felony convictions and no prior experience with lengthy incarceration, is likely to have a

substantial impact on future conduct.

    E.  <u>The Need to Promote Respect for the Law and to Provide Just Punishment</u>

   A 10  year sentence in this case is very substantial and would be considered excessive by

many based on the limited quantity of drugs and the lack of a prior felony conviction.  Mr. Hill's

sentence is driven by a discrepancy in the law that both the Sentencing Commission and the

Department of Justice recognize as racially disparate and fundamentally unfair.  To borrow  the

words of the Commission itself, such a sentence "'fosters disrespect for and lack of confidence in

the criminal justice system' because of a 'widely-held perception' that it promotes unwarranted

disparity based on race.'" *Kimbrough*, 552 U.S. at 98.

   Public perception of the criminal justice system is not a mere trivial concern.  As Judge

Reggie Walton noted in testimony before the Senate Judiciary Committee, "The words 'equal justice

under law'... are not mere rhetoric; they are the expression of a principle that lies at the heart of the

rule of law." Judge Reggie B. Walton, United States District Court for the District of Columbia,

Before the United States Senate, Committee on the Judiciary, Subcommittee on Crime and Drugs,

"Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity," at 3 (April 29,

2009) (hereinafter *Walton Statement*).[3] When laws are not applied equally, "[p]eople come to doubt

the legitimacy of the law – not just the law associated with crack – but *all* laws. People come to

view the courts with suspicion, as institutions that mete out unequal justice, and the moral authority

of not only the federal courts, but all courts, is diminished." *Walton Statement* at 8.

## CONCLUSION

For the reasons set forth above, a sentence of 10 years, the mandatory minimum, which is

also recommended by the government, is appropriate in this case.

Respectfully submitted,

By counsel,

MICHAEL S. NACHMANOFF,

Federal Public Defender

By:        _____/s/_____
           Kevin Brehm
           Assistant Federal Public Defender
           pro hac vice (for now)
           Attorney for Torrance G. Hill
           Office of the Federal Public Defender
           1650 King Street, Suite 500
           Alexandria, Virginia 22314
           703-600-0825
           703-600-0880 (fax)
           kevin_brehm@fd.org

---

[3]Available at: http://judiciary.senate.gov/pdf/09-04-29WaltonTestimony.pdf.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2010, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Dennis Fitzpatrick, Esquire
Assistant U.S. Attorney
2100 Jamieson Ave.
Alexandria, Virginia, 22314
(703) 299-3700
(703) 299-3981 (facsimile)
dennis.fitzpatrick@usdoj.gov

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
Kevin Brehm
Assistant Federal Public Defender
pro hac vice (for now)
Attorney for Torrance G. Hill
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0825
703-600-0880 (fax)
kevin_brehm@fd.org